IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:12-cv-289-BO

STATE FARM FIRE AND CASUALTY    )
COMPANY as subrogee of    )
CHRISTOPHER TAYLOR,    )
    )
      Plaintiff,    )
    )
      v.    )
    )
LOUISIANA PACIFIC CORPORATION,    )
    )
      Defendant.    )
_____)

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISQUALIFY
RONALD D. SIMMONS AS AN EXPERT WITNESS AND EXCLUDE HIS REPORTS
AND TESTIMONY PURSUANT TO FRE 702 AND <u>DAUBERT</u>**

# Table of Contents

Table of Authorities ............................................................................................................ii

STATEMENT OF RELEVANT FACTS ............................................................................ 1

ARGUMENT AND AUTHORITIES..................................................................................... 3

    I.   STANDARD OF REVIEW ...................................................................................... 3

        A.  Legal Standard For The Admissibility Of Expert Testimony ........................................ 6

        B.  Burden Of Production ................................................................................... 5

    II.  ANALYSIS........................................................................................................ 5

        A)  Simmons Is Not Qualified As An Expert on Lightning-Induced Fires or Radiant Barrier Systems And His Testimony Is Not Relevant ...................................................... 5

        B)  Simmons' Testimony Is Not Based on Sufficient Facts or Data And Is Not Relevant.... 8

        C)  Simmons' Theory Cannot Be Tested as Required By Daubert And Is Not Reliable..... 11

        D)  Simmons' Theory Has Not Been Subjected To Peer Review and Publication As Required By Daubert And Is Not Reliable.......................................................... 12

        E)  Simmons' Testing of TechShield Has No Known Rate of Error And Is Not Reliable.. 13

        F)  No Universal Standards Controlled The Techniques Used by Simmons And They Are Not Reliable....................................................................................... 14

        G)  Simmons' Theory Has Not Been Accepted Within Any Scientific Community And Is Not Reliable........................................................................................ 15

CONCLUSION.................................................................................................... 15

Tab 1 – Affidavit of William Wusterhausen

Tab 2 – Excerpts of Deposition of Ronald D. Simmons

Tab 3 – Excerpts of Deposition of J. Robert McGraw, Jr.

Tab 4 – Excerpts of Deposition of Mark Goodson

Tab 5 – Excerpts of Deposition of Gary M. Richetto

Tab 6 – Unpublished Cases

# Table of Authorities

## Cases

Alevromagiros v. Hechinger Co., 993 F.2d 417 (4th Cir. 1993) ...................................................... 9

Bourjaily v. United States, 483 U.S. 171 (1987) ...................................................................... 7

Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993) ..................................... 1, 3, 4, 5, 6, 13

Estate of Myers v. Wal-Mart Stores, Inc., 5:09-CV-549-FL (E.D.N.C. April 11, 2011)............................ 5, 10

Gallagher v. Southern Source Packaging, LLC, 568 F.Supp.2d 624 (E.D.N.C. 2008).. 9, 12, 14, 15, 16, 17, 18

General Electric Co. v. Joiner, 522 U.S. 136 (1998) ............................................................... 1, 3, 6

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137 (1999) ..................................................... 1, 3, 6

Maryland Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780 (4th Cir. 1998)........................................ 7

Persinger v. Norfolk & Western Railway Co., 920 F.2d 1185 (4th Cir. 1990)................................. 8

Thomas J. Kline, Inc. v. Lorillard, Inc., 878 F.2d 791 (4th Cir. 1989) ........................................ 8

U.S. v. Crisp, 324 F.3d 261 (4th Cir. 2003) ........................................................................ 13

United States v. Barnette, 211 F.3d 803 (4th Cir. 2000) ........................................................ 4

United States v. Dorsey, 45 F.3d 809 (4th Cir. 1995)............................................................ 5

United States v. Harris, 995 F.2d 532 (4th Cir. 1993) ........................................................... 5

United States v. Lewis, 220 F.Supp.2d 548 (S.D.W.Va. 2002)................................................. 6

United States v. Llera Plaza, 188 F.Supp.2d 549 (E.D.Pa. 2002) ............................................ 13

United States v. Portsmouth Paving Corp., 694 F.2d 312 (4th Cir. 1982)................................... 5

## Rules

Fed. R. Evid. 702 .......................................................................................................... 3, 5, 6

Defendant Louisiana Pacific Corporation ("LP") submits this memorandum in support of its Motion to Disqualify Ronald D. Simmons as an Expert Witness and Exclude his Reports and Testimony Under Federal Rule of Evidence 702 ("Rule 702") for failing to satisfy the requirements for admissible expert testimony set forth by the U.S. Supreme Court in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579, 579-80 (1993),<u>General Electric Co. v. Joiner</u>, 522 U.S. 136 (1998), and <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137 (1999).

## STATEMENT OF RELEVANT FACTS

State Farm Fire and Casualty Company ("State Farm") brought this subrogation claim against LP, seeking to recover insurance proceeds paid by State Farm on account of a house fire ("Taylor Fire") caused by lightning. The house damaged by lightning was constructed by the general contractor/homeowner using LP's TechShield radiant barrier sheathing product to form the roof deck upon which shingles were laid. TechShield is an oriented-strand board ("OSB") sheet laminated on the interior face with paper, glue, and aluminum foil to radiate heat away from the interior of the structure. State Farm's negligence and warranty claims each depend on proving that TechShield causes a fire when lightning strikes a house. Compl. ¶¶ 8, 11, 16. The only purported evidence produced by State Farm to support its theory of causation are the expert reports and testimony of Ronald D. Simmons ("Simmons"). In his initial report dated August 29, 2012 and supplemental report dated November 21, 2012 (collectively "Simmons' Reports"), and during his deposition on November 30, 2012, Simmons asserted several opinions related to the causal relationship between TechShield and the Taylor Fire: (1) that resistive heating through the aluminum lamination of TechShield when energized by lightning was the source of the heat that caused the ignition of the fire (Simmons' Dep. 7:25 – 8:13); (2) that the lamination of the TechShield was the first material ignited in the fire (<u>id</u>. 8:22-25); (3) that lightning

struck the metal chimney and went to ground through many paths along the TechShield, one of which was through the fire origin area, (id. 9:17-10:18); (4) that TechShield's characteristics - conductivity, resistivity, and ignition temperature being lower than the melting temperature of the metal used in the lamination – causes TechShield to readily generate heat when it is conducting electrical current and readily ignite when exposed to that heat (id. 11:10-12:19).

At the very end of Simmons' deposition, Plaintiff's counsel solicited three new opinions which Plaintiff had failed to disclose pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. These opinions are subject to a separate motion to exclude based on the procedural failure to disclose, but are included in this Daubert motion in the alternative. The opinions solicited from Simmons by Plaintiff's counsel include: (1) that LP should have tested the behavior of TechShield when energized by electrical current (id. 255:1-12); (2) TechShield is hazardous because of its characteristics and location of use (id. 257:1-7); and (3) LP should have been aware of TechShield's dangerous characteristics (id. 257:8-11).[1] At the heart of each of these opinions, and Simmons' testimony as a whole, is his theory that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning. None of these opinions meet the legal standard for the admissibility of expert testimony set forth in Rule 702, Daubert, 509 U.S. 579, Joiner, 522 U.S. 136, and Kumho Tire Co., 526 U.S. 137.

---

[1] Simmons stated that there were no other areas or topics in which he would offer an opinion. (Simmons' Dep. 258:21-259:1)

2

ARGUMENT AND AUTHORITIES

I.      STANDARD OF REVIEW

        A.      Legal Standard For The Admissibility Of Expert Testimony

The introduction of expert opinion testimony is further governed by Federal Rule of

Evidence 702. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The 2011 revisions to Rule 702 clearly reflect the (1) helpfulness/relevance and (2)

reliability prongs of the Daubert analysis.  Daubert, 509 U.S. at 589 (Under Rule 702, trial

judges act as gatekeepers to "ensure that any and all scientific testimony... is not only relevant,

but reliable.").  Subparts (a) and (b) of Rule 702 relate to helpfulness and relevancy, while

subparts (c) and (d) relate to reliability.[2]  See United States v. Barnette, 211 F.3d 803, 815 (4th

Cir. 2000) (In conducting a Daubert analysis, the trial court asks two questions: (1) is the

proffered scientific evidence valid and reliable, and (2) will the testimony aid the trier of fact in

deciding the ultimate issues in the case?).

---

[2] The 2011 revisions moved subpart (a) from the body text to a subpart, but made no substantive changes. Fed. R. Evid. 702, advisory committee's note (2011).

3

The touchstone of the relevancy prong is whether the testimony will be helpful to the jury. See United States v. Harris, 995 F.2d 532, 534 (4th Cir. 1993) ("As Rule 702 indicates, expert testimony is only permitted if it assists the trier of fact to understand evidence or to determine a fact in issue."). The district court has broad discretion to decide whether expert testimony is helpful to the jury, or whether it instead is within the common knowledge of the jurors or would be unfairly prejudicial, confusing, misleading, or cumulative under Rule 403. See United States v. Dorsey, 45 F.3d 809, 815 (4th Cir. 1995); Harris, 995 F.2d at 534; United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir. 1982); Estate of Myers v. Wal-Mart Stores, Inc., 5:09-CV-549-FL, at *4 (E.D.N.C. April 11, 2011).

At the core of the reliability prong is whether the expert's proposed testimony is based on more than a subjective belief or unsupported speculation. Daubert, 509 U.S. at 590. The Supreme Court in Daubert, Joiner, and Kumho Tire Co. make clear that the reliability tests in Rule 702 provide district court judges with the criteria to ensure that no opinion is admitted unless it is based on scientific knowledge. Scientific knowledge as the basis for an expert opinion connotes more than "subjective belief or unsupported speculation," Daubert, 509 U.S. at 590, and requires more than the expert's inadmissible bald assertion supporting that view. Joiner, 522 U.S. at 146.

Daubert sets forth a checklist of factors to be considered by district courts to determine whether proposed expert testimony is scientifically valid and reliable, hence admissible. These factors examine (1) whether the expert's theory can be and has been tested, (2) whether the theory has been published in peer-reviewed journals and subject to professional scrutiny and criticism, (3) what is the known or potential error rate associated with applying the expert's theory and method to real data, and (4) whether the expert's theory enjoys general acceptance in

4

the relevant scientific community. Daubert, 509 U.S. at 593-94. Joiner reaffirmed the Court's view that "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit [bare assertion] of the expert." Joiner, 522 U.S. at 146.

The Daubert factors are not meant to be exclusive or necessarily dispositive. Id. However, when "the Daubert factors are reasonable measures of the [expert] testimony's reliability, the Supreme Court has instructed that the trial judge should consider them." United States v. Lewis, 220 F.Supp.2d 548, 551 (S.D.W.Va. 2002) (citing Kumho Tire Co., 526 U.S. at 152).

### B. Burden Of Production

State Farm bears the burden of coming forward with evidence that the proffered testimony of Simmons that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning is admissible under Rule 702. Maryland Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780 (4th Cir. 1998); see Fed. R. Evid. 702 advisory committee's note (2000) ("Consequently, the admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.") (citing Bourjaily v. United States, 483 U.S. 171 (1987)).

### II. ANALYSIS

### A) Plaintiff Cannot Show That Simmons' Testimony Is Helpful or Reliable As Required By Rule 702

Prior to considering whether Simmons' theories and methodology are reliable under Daubert, an initial inquiry must be made pursuant to Rule 702 as to whether Simmons' testimony

would be helpful and relevant to the jury. Therefore, State Farm must show that Simmons' is

qualified with expert knowledge and that his testimony is based on sufficient facts and data.  Fed.

R. Evid. 702. State Farm has failed to meet its burden.

1. <u>Simmons Is Not Qualified As An Expert on Lightning-Induced Fires or Radiant Barrier Systems And Therefore, His Testimony Is Not Relevant</u>

The court cannot allow Simmons' testimony to be introduced as expert opinion under Rule 702

unless Plaintiff has shown that Simmons is qualified as an expert.  Fed. R. Evid. 702.  While "one

knowledgeable about a particular subject need not be precisely informed about all details of the issues

raised in order to offer an opinion," <u>Thomas J. Kline, Inc. v. Lorillard, Inc.</u>, 878 F.2d 791, 799 (4th Cir.

1989), testimony from an expert is not helpful where it concerns matters within the everyday knowledge

and experience of a lay juror. <u>Persinger v. Norfolk & Western Railway Co.</u>, 920 F.2d 1185, 1188 (4th

Cir. 1990).

State Farm has provided no evidence that Simmons is qualified as an expert by knowledge, skill,

experience, training, or education, to testify that the presence of TechShield, and not the lightning strike

itself, causes fires when a house is struck by lightning. Simmons has never been qualified as a witness

on the subject of lightning induced fires, fire cause or fire origin, first material ignited in a lightning-

induced fire, electrical events after a lightning strike, the involvement of construction materials in a

lightning-induced fire, characteristics of radiant barrier systems, or about the involvement of radiant

barrier systems in lightning-induced fires. (Simmons Dep. 73:12-74:24).

Put in context, Simmons' only professional experience with lightning-induced fire and radiant

barrier sheathing is limited to inspecting homes where an insurance company has received a claim for a

fire or designing and conducting his testing to achieve and support specific opinions that support the

insurance companies that hire his employer McDowell-Owens. Simmons' unobjective motivations and

unscientific methodology are clearly demonstrated by his failure to investigate, evaluate or test anything that might discredit his opinion that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning. This outcome-biased and litigation-focused work does not qualify Simmons as an expert. Thomas J. Kline, Inc., 878 F.2d at 800 ("Although it would be incorrect to conclude that Gordon's occupation as a professional expert alone requires exclusion of her testimony, it would be absurd to conclude that one can become an expert simply by accumulating experience in testifying."). Of Simmons varied career, prior to joining McDowell-Owens in 2008, his only work with lightning-induced fire was when lightning struck a pine tree located at his vineyard. (Id. 33:22-34:12). Similarly, prior to joining McDowell-Owens, his only work with radiant barrier systems was when he installed a radiant barrier system in a commercial structure which he built. (Id. 25:24-26:13). In fact, Simmons first became a Certified Fire and Explosion Investigator in 2009, after joining McDowell Owens. (Id. 40:20-25). Within months of joining McDowell-Owens, he was expounding his theory that radiant barrier sheathing causes fires on the firm's website. Outside of his outcome-biased and litigation-focused work at McDowell Owens, Simmons experience falls far from the subjects for which Plaintiff seeks to qualify him as an expert. He has been a truck driver (id. 27:9-28:6), developed real estate (id. 24:21-25:3), owned a vineyard (id. 33:7-17), and does not have a college degree (id. 39:18-21). Because he is not qualified to help the trier of fact, Simmons should be excluded. See Gallagher v. Southern Source Packaging, LLC, 568 F.Supp.2d 624, 634 (E.D.N.C. 2008); Jack W. Weinstein et al., Weinstein's Federal Evidence § 702.04 (2d ed. 2002) ("[T]he court must determine whether a proposed witness's qualifying training or experience, and resultant specialized knowledge, are sufficiently related to the issues and evidence before the trier of fact....").

Instead of providing expert qualifications, Simmons offers only the common sense experience of someone who has seen both trees and houses catch fire from lightning strikes. That is the same common

7

sense possessed by lay jurors. Therefore his testimony becomes no more than his subjective opinion, which this Circuit has consistently found unhelpful to the trier of fact and barred by the trial court's gatekeeping function.  See Alevromagiros v. Hechinger Co., 993 F.2d 417, 421 (4th Cir. 1993); see also Fed. R. Evid. 702 advisory committee's note ("The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'"); Estate of Myers, 5:09-CV-549-FL, at *5-6.  Because Simmons does not have the knowledge, skill, training or education to be helpful to the jury, and merely testifies about common sense understanding possessed by the jury, he is not qualified as an expert on the topic of whether the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning, and he and his testimony should be excluded under Rule 702.

    2. <u>Simmons' Testimony Is Not Based on Sufficient Facts or Data And Is Not Relevant</u>

    Pursuant to Rule 702, the Court must also determine whether Simmons' testimony is based on sufficient facts and data.  The record shows that Simmons bases his theory on second hand information, internet research and his own flawed testing. To begin with things Simmons failed to do:  Simmons never inspected the Taylor home before or after the fire (Simmons Dep. 77:5-15); Simmons never spoke with the general contractor/homeowner (id. 77:16-23); and Simmons did not photograph, measure or diagram the house (id. 77:24-78:6).  What Simmons did do is review a news article about the storm on the internet and researched lightning and the characteristics of aluminum on Wikipedia.  (Id. 78:17-23; 95:8-96:8). He also spoke with Rob McGraw, Plaintiff's fire investigator, about the case for less than 10 minutes. (Id. 79:25-80:10)  It is significant that Rob McGraw, who thoroughly investigated the Taylor house on two occasions after the fire could not identify the first building material ignited, and could only determine an area of origin of the fire that he says was caused by lightning.  (McGraw Dep. 86:19-87:12). Yet, Simmons, who lives and works in Texas and never investigated the scene, boldly opines that TechShield was the first material to ignite. (Simmons Dep. 8:16-25). Simmons offers this opinion,

yet strikingly he was not even aware that 240 square feet of the roof structure had been removed and discarded prior to any inspection or photographs being taken of the house. (Id. 84:5-17). He never saw any photographs of the fire damaged area as it existed after the fire but before new roofing was laid. (Id. 97:4-10). He was also unaware that the homeowner knew of five other lightning-induced fires in the vicinity on the night of the Taylor Fire. (Id. 93:23-94:5; contra McGraw Dep. 72:18-73:20).

The serious flaws and repercussions of Simmons' decision to base his opinions on second hand information and "research" from the internet are illustrated by his misuse of quotes from Billy Wusterhausen, an assistant fire chief for Round Rock, Texas. Simmons claims that local first responders have provided him with data that homes of a similar profile – newer homes built with radiant barrier sheathing in high-lightning areas – have a higher rate of fires. (Simmons Dep. 168:12-170:9). The only local first responder that Simmons could name is Billy Wusterhausen. (Id. 173:20-21). The truth is that Simmons never spoke with Wusterhausen. Instead he found a quote from Wusterhausen in the newspaper or online.[3] (Id. 173:23-174:14; 207:22-208:19). Simmons alleged that Wusterhausen's quote was one of five reasons that he believed that radiant barrier sheathing causes fire when a house is struck by lightning. (Id. 210:9-20). Had Simmons bothered to ask Wusterhausen to explain his alleged quote, he would have learned that the common profile referenced by Wusterhausen was two-story homes in certain parts of town, not involving new construction. More importantly, he would have learned that

---

[3] A report by Simmons "published" on the on the McDowell-Owens's website includes the follow quote:

> "Firefighters in a Central Texas city say they've seen an increase in house fires caused by lightning . . . Round Rock Fire Department Assistant Chief Billy Wusterhausen says house fires caused by lightning strikes are becoming a lot more common…He can't explain why, but he did say all the homes hit fit the same profile…" (Excerpt from article "Lightning Storms A Potential Cause for House Fires" on KEYE TV website –www.weareaustin.com).

Ronald D. Simmons, Unusual Behavior of Radiant Barrier Materials In Fire Causation, http://mcdowellowens.com/blog/wp-content/uploads/2012/10/Unusual-Behavior-of-Radiant-Barrier-Materials-in-Fire-Causation.pdf, at 5 (last visited March 13, 2013).

Wusterhausen's comments had absolutely nothing to do with the presence of radiant barrier roof sheathing in the homes that had experienced fires. <u>See</u> Wusterhausen Aff. ¶¶ 3-4. In other words, Simmons either misleadingly referenced to Wusterhausen or made assumptions that were wholly inaccurate. Regardless, Simmons clearly jumped to the wrong conclusion and built his theory that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning on a false assumption. <u>See</u> <u>Gallagher,</u> 568 F.Supp.2d at 635 (excluding report and testimony that were "a cornucopia of flawed assumptions"). Surely for an expert to offer opinion testimony under the aura of being an expert requires more than this.

Furthermore, even Simmons recognizes that he does not have any data to support any statistically significant increased risk of fire caused by the presence of TechShield. (Simmons Dep. 197:25-198:10). This is significant. He admits that he does not have sufficient data to support his opinion that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning. Moreover, Simmons acknowledged that he has made no investigation of other lightning-induced fires in homes without radiant barrier sheathing or to homes struck by lightning that had radiant barriers but in which no fire resulted. (<u>Id</u>. 194:3-195:15). Simmons did not even examine whether his testing would induce fires in other building materials such as unlaminated OSB. (Simmons' Dep. 156:19-22). Fundamentally, there is no way for Simmons to credibly evaluate whether the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning if he was only looking at one side of the data which he selected to achieve a pre-determined result.

This is exactly the type of opinion testimony not supported by data, and built to support a specific opinion, that Rule 702 and <u>Daubert</u> are designed to exclude. Because Simmons testimony is not based in sufficient facts or data, it should be excluded under Rule 702.

B) Plaintiff Cannot Show That Simmons' Testimony Meets the Reliability Requirement of Daubert and Its Progeny

In addition to failing to meet the helpfulness/relevance requirement for admissibility under Rule 702, Simmons' testimony fails to be reliable pursuant to the five factors under Daubert, Joiner, and Kumho Tire Co..

1. Simmons' Theory Cannot Be Tested as Required By Daubert And Is Not Reliable

The first Daubert factor is whether the theory has been tested. State Farm has offered no evidence of testing of whether the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning. While Simmons did perform testing in the form of running electrical current through TechShield, he admitted that his testing did not replicate lightning striking TechShield. (Simmons' Dep. 146:19-21). Instead, the testing done by Simmons' involved energizing TechShield with a car battery. (Id. 143:22-25). The energy applied in Simmons' test involved approximately 100 amps of current for a period of 20 milliseconds (id. 147:21-25; 149:2-4), while lightning delivers hundreds of thousands of amps of current in as little as 100 microseconds (id.147:23-24; 149:5-9). Electrical heating is affected by both voltage and duration of energy. Therefore, Simmons' application of energy for roughly 1,000 times longer than the duration of a lightning strike profoundly distorts his results. (Goodson Dep. 104:3-105:9). Because Simmons' testing had scant relevance to a lightning strike, "there has not been critical testing to determine the scientific validity of the technique." U.S. v. Crisp, 324 F.3d 261, 273-74 (4th Cir. 2003) (Michael, J., dissenting) (citing United States v. Llera Plaza, 188 F.Supp.2d 549, 564 (E.D.Pa. 2002)). The lack of such critical testing demonstrates that Simmons opinions are not based on reliable principles and methods. Id.

Because Simmons' theory that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning has never been tested by energizing TechShield with a

11

current even within the same order of magnitude to lightning – in either the amount of current or the duration for which the current is applied – it fails to meet the requirements for expert testimony required by <u>Daubert</u> and should be excluded under Rule 702. <u>See</u> <u>Gallagher</u>, 568 F.Supp.2d at 634.

> ### 2. Simmons' Theory Has Not Been Subjected To Peer Review and Publication As Required By Daubert And Is Not Reliable

The second <u>Daubert</u> factor is whether the theory or technique has been subjected to peer review and publication. Again, State Farm has offered no evidence that Simmons' theory that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning has been subjected to peer review. That is because it has not. Fire investigators, like other forensic scientists, have their own professional publications. For example, the International Association of Arson Investigators produces the *Fire & Arson Investigator* journal. (Goodson Dep. 173-74.) The editorial board of *Fire & Arson Investigator* requires that every article received for submission "must be peer reviewed by no less than three reviewers." <u>See</u> IAAI website (accessed at http://firearson.com/publications on March 4, 2013). Plaintiff's own warnings expert acknowledges that "peer review" specifically means that the caliber of the article has been judged by unaffiliated professionals in the same field. (Richetto Dep. 25:4-27:20; <u>see also</u> Goodson Dep. 36:1-9). Rather than subjecting his theories to such peer-reviewed professional publications, Simmons has only "published" his testing in the newsletter of Fire Findings, LLC, a forensic engineering firm (Simmons Dep. 45:21-46:7)[4], and on the National Association of Fire Investigators ("NAFI") website (<u>id</u>. 48:12-15). Neither of these organizations required or provided outside peer review of Simmons' work. (Richetto Dep.

---

[4] Fire Findings, LLC is "is a forensic engineering firm dedicated to determining how products, devices and systems work and fail – and how they cause fires, explosions, floods, freezing or other types of incidents." <u>See</u> Fire Findings, LLC website (accessed at http://www.firefindings.com/ on March 4, 2013). Fire Findings also puts on seminars for audiences that include "attorneys and insurance company personnel." <u>Id</u>.

130:2-131:8; Simmons Dep. 46:23-47:3; 48:16-24). Unlike typical peer-reviewed journals, State Farm has shown no evidence that *Fire Findings* or the NAFI website run articles that include or prompt critique or reanalysis by other scientists as required by Daubert. Crisp, 324 F.3d at 274. This lack of critical analysis has had a predictable effect. In the years since Simmons' theory was first "published" in the 2009 edition of the Fire Findings, LLC newsletter, he is unaware of any other engineer or expert giving the same opinion. (Simmons Dep. 202:20-25). Rather than pursuing criticism and vibrant exchange of ideas, the papers containing Simmons' theory have been sent to insurance companies and lawyers who represent them in subrogation lawsuits against manufacturers. (Id. at 203:1-11). Simmons failure to subject his testing and opinion to the rigors of a peer review process is telling.

Because Simmons' theory that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning has never been subjected to peer review and publication in a legitimate journal, it fails to meet the requirements for expert testimony required by Daubert and should be excluded under Rule 702. See Gallagher, 568 F.Supp.2d at 634.

3. Simmons' Testing of TechShield Has No Known Rate of Error And Is Not Reliable

The third Daubert factor calls for consideration of the known or potential rate of error. State Farm has presented no evidence concerning the reliability of Simmons testing of TechShield. Nonetheless, Simmons testified that at least one test of TechShield did not result in fire. (Simmons Dep. 141:22-142:7). Of course, Simmons only began to keep accurate records of his testing of TechShield once he had achieved the desired outcome. Only then were the tests documented and the data included in his articles. (Id. 145:4-25). This rampant data manipulation is the reason reliability rates are necessary for the court to carry out its gate-keeping function under Daubert. Simmons' manipulation of data and testing is exacerbated by the context in which he developed his opinions. Simmons' firm, McDowell Owens, only inspects homes where an insurance company has received a claim from a homeowner

following a fire (id. 170:14-21), so he has no idea and no knowledge of how many homes with radiant

barrier sheathing are struck by lightning and do not catch fire. Everything Simmons is using – from his

self-serving data selection to his outcome-biased testing – is designed to achieve and support a specific

opinion. How can this manipulation not be suspect where Simmons profits from his opinion because

insurance companies are hiring him to generate these conclusions?

Because Simmons' method of testing his theory that the presence of TechShield, and not the

lightning strike itself, causes fires when a house is struck by lightning has no determinable rate of

reliability, it fails to meet the requirements for expert testimony required by Daubert and should be

excluded under Rule 702. See Gallagher, 568 F.Supp.2d at 634.

4.  No Universal Standards Controlled The Techniques Used by Simmons And They Are
    Not Reliable

The fourth Daubert factor asks whether there are universal standards that govern the application

of the technique used by Simmons. State Farm has not established that any such standards, such as

ANSI, ASTM, IEEE or IEC standards, were employed by Simmons. (Simmons Dep. 162:16-163:5).

Simmons admitted that no standard testing methodology was applied to his theory. (Id. 163:6-10).

Moreover, according to Simmons the bodies which develop and oversee such standards are uninterested

in generating a test that would apply to his theory. (Id. 163:10-12) Therefore there is no independent

verification of Simmons' testing.

Because Simmons' method of testing his theory that the presence of TechShield, and not the

lightning strike itself, causes fires when a house is struck by lightning was not governed by universal

standards, it fails to meet the requirements for expert testimony required by Daubert and should be

excluded under Rule 702. See Gallagher, 568 F.Supp.2d at 634.

5. <u>Simmons' Theory Has Not Been Accepted Within Any Scientific Community And Is Not Reliable</u>

The fifth <u>Daubert</u> factor is whether the theory has been generally accepted in the relevant scientific community.  State Farm has produced no evidence that Simmons' theory has been accepted within any scientific community.  Rather, Simmons admits that, other than his co-workers at McDowell Owens, no other engineer or expert has agreed that radiant barrier sheathing is hazardous in the event of a lightning strike. (Simmons Dep. 202:20-25). This silence is despite Simmons placing several articles on the internet and in trade journals. While this has succeeded in generating income for Simmons and his firm, no other unrelated expert or disinterested engineer has reported similar findings or otherwise agreed with Simmons' position.

Because Simmons' theory that the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning has not been accepted by anyone in any scientific community, it fails to meet each of the five requirements for expert testimony required by <u>Daubert</u> and should be excluded under Rule 702.  <u>See</u> <u>Gallagher</u>, 568 F.Supp.2d at 634.

CONCLUSION

Plaintiff's proposed expert Ronald D. Simmons is not qualified as an expert on the topic of whether the presence of TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning and his reports and testimony fail to meet any of the relevance and reliability requirements for the admissibility of expert testimony as required by FRE 702 and <u>Daubert</u>. This is exactly the type of unreliable testimony that the <u>Daubert</u> decision and its progeny intended to protect against. Based on faulty assumptions, an absence of credible data, and reflecting an approach designed to reach a pre-determined result, Simmons should not be permitted to offer these opinions at trial. Rather, Simmons should be disqualified as an expert in this case and his testimony that the presence of

15

TechShield, and not the lightning strike itself, causes fires when a house is struck by lightning – including his specific opinions (1) that resistive heating through the aluminum lamination of TechShield when energized by lightning was the source of the heat that caused the ignition of the fire; (2) that the lamination of the TechShield was the first material ignited in the fire; (3) that lightning struck the metal chimney and went to ground through many paths along the TechShield, one of which was through the fire origin area; (4) that TechShield's characteristics - conductivity, resistivity, and ignition temperature being lower than the melting temperature of the metal used in the lamination – caused TechShield to readily generate heat when it is conducting electrical current and readily ignite when exposed to that heat; (5) that LP should have tested the behavior of TechShield when energized by electrical current; (6) TechShield is hazardous because of its characteristics and location of use; and (7) LP should have been aware of TechShield's dangerous characteristics – should be excluded from all future phases of this case. Simmons should also be excluded from offering testimony concerning any increased risk of fire in homes with radiant barrier sheathing.

Additionally, because Simmons' testimony is the only purported evidence produced by State Farm to support its theory of causation, which is an essential element of each of State Farm's claims, the Court should grant summary judgment for LP and dismiss State Farm's claims.

[Signature Page Follows]

16

This the 21st day of March, 2012.

LOUISIANA PACIFIC CORPORATION

By:    /s/ Nathaniel C. Parker
L. Neal Ellis, Jr.
NC State Bar No. 12719
Nathaniel C. Parker
NC State Bar No. 34145
nparker@ellisanthony.com
*Attorneys for Defendant*
Ellis & Anthony LLP
343 S. White Street, Suite C
Wake Forest, NC  27587
919-562-9925 (p)
919-562-9935 (f)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:12-cv-289-BO

| | | |
|---|---|---|
| STATE FARM AND CASUALTY | ) | |
| COMPANY as subrogee of | ) | |
| CHRISTOPHER TAYLOR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| LOUISIANA PACIFIC CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

I hereby certify that on the 21st day of March, 2013, I electronically filed the foregoing Memorandum in Support of Defendant's Motion to Disqualify Ronald D. Simmons As An Expert Witness and Exclude His Reports and Testimony Under FRE 702 and Daubert with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

> L. Skye MacLeod, skye@ncsubrogation.com
> Patrick M. Anders, patrickmanders@gmail.com

This the 21st day of March, 2013.

LOUISIANA PACIFIC CORPORATION

By:   /s/ Nathaniel C. Parker
Nathaniel C. Parker
Attorney for Defendant
NC State Bar No. 34145
Ellis & Anthony LLP
343 S. White Street, Suite C
Wake Forest, NC  27587
919 562 9925
nparker@ellisanthony.com